**UNITED STATES of America, Appellee,**

v.

**Raymond Leon CURRIER, Defendant, Appellant.**

**No. 79–1242.**

United States Court of Appeals, First Circuit.

Argued Jan. 9, 1980.

Decided March 25, 1980.

Peter J. Rubin, Portland, Maine, with whom Bernstein, Shur, Sawyer & Nelson, Portland, Maine, was on brief, for defendant, appellant.

Paula D. Silsby, Asst. U. S. Atty., Portland, Maine, with whom James W. Brannigan, Jr., U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Appellant Raymond L. Currier was a federally licensed firearms dealer doing business under the name of "Currier Custom Firearms" in Wilton, Maine. Appellant was found guilty by a jury in the district court on eleven counts of selling firearms to a person whom he knew or had reasonable cause to believe was an out of state resident, 18 U.S.C. §§ 922(b)(3), 924(a), and eleven additional counts of failing to maintain a firearms transaction record (Form 4473, 27 C.F.R. 178.124 (1979)), with respect to those sales, 18 U.S.C. §§ 922(m), 923(g), 924(a), and was sentenced to a term of five years on each count, to be served concurrently. We affirm.

On October 3, 1978, Peter Gagliardi, a resident of Massachusetts and a Special Agent of the Bureau of Alcohol, Tobacco, and Firearms (ATF), made a visit to Currier Custom Firearms. Using the undercover alias of "Peter Pepe", Gagliardi told appellant that he was from Massachusetts, that he wanted to purchase firearms, and that he did not want to sign for them.

The next day, Gagliardi again met with appellant and the two of them proceeded to appellant's house trailer where appellant sold Gagliardi two firearms without requiring him to complete a Form 4473. On October 19, the two met for a third time at Currier Custom Firearms where appellant sold Gagliardi three additional firearms without requiring the completion of the required forms. Gagliardi gave appellant a Boston area phone number, writing it down along with his alias on a piece of paper which he gave to appellant.

On December 12, the United States Magistrate, on the basis of affidavits filed by Gagliardi and another ATF agent, issued a warrant for the search of the premises known as "Currier Custom Firearms". The warrant specifically authorized the search for and seizure of records relating to the acquisition and disposition of firearms.

ATF agents entered and searched the premises of "Currier Custom Firearms" pursuant to the warrant. The premises contained a partitioned area within which were a bed, night stand, small chest of drawers, and bureau. In the top drawer of the bureau the agents found and seized a piece of paper and a matchbook cover, on each of which were written Gagliardi's alias, which was known to the officers, and a Massachusetts phone number.

Appellant first challenges the district court's instructions to the jury that the federal regulations appellant was charged with violating applied to the sales to Gagliardi "even though the firearm is part of the dealer's personal firearms collection and even though the firearm was sold at a location other than the dealer's licensed premises." In so instructing the jury, the district

court relied upon *United States v. Scherer*, 523 F.2d 371 (7th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1108, 47 L.Ed.2d 315 (1976), as well as upon its own reading of the statute.

■ We see no merit whatsoever to appellant's argument on this point. The case relied upon by the district court is directly on point and held that it is immaterial whether firearms sold by a dealer were originally part of his personal or business inventory, since the moment they were offered for sale, the federal law applied. This holding is without doubt correct; otherwise, the federal regulations could be circumvented altogether by dealers who were slick enough to establish "personal collections" for otherwise unlawful sales.

■ Appellant next challenges the district court's refusal to instruct the jury that the government must prove that appellant knew that the sales violated § 922 in order to obtain a conviction on the eleven counts pertaining to the failure to complete the required forms. He contends that due to his alleged belief that the sales to Gagliardi were not covered by the federal regulations, he did not "knowingly . . . fail to properly maintain" a Form 4473 for each sale of a firearm to Gagliardi.

No court has ever held that ignorance of the law, in the sense of a lack of knowledge that one's actions are unlawful, is a defense in a prosecution of a dealer under the federal firearms laws.[1] Instead, courts have repeatedly held that "ignorance of the law" is not a defense in prosecutions for violations of the federal firearms laws. *See United States v. Ruisi*, 460 F.2d 153 (2d Cir.), *cert. denied*, 409 U.S. 914, 93 S.Ct. 234, 34

1. Appellant cites *United States v. Behenna*, 552 F.2d 573 (4th Cir. 1977) and *United States v. Squires*, 440 F.2d 859 (2d Cir. 1971). In both cases, however, an apparent "mistake of law" was actually a "mistake of fact" in that the mistake pertained to a question of status which was determined by a law other than the one under which the defendant was prosecuted. Thus, in both cases, where defendants were charged with making false statements concerning their residencies, they were allowed to defend on the grounds that they mistakenly

thought their residencies to be other than what they in fact were as a matter of state law. In neither case were defendants allowed to defend on the grounds that they did not know that it was illegal to make false statements. *Cf. United States v. Freed*, 401 U.S. 601, 612, 615, 91 S.Ct. 1112, 1119, 1121, 28 L.Ed.2d 356 (1971) (Brennan, J., concurring) (explaining how mistake concerning a law other than the one under which the defendant was prosecuted can be a mistake of fact).

L.Ed.2d 176 (1972); *United States v. Powell*, 513 F.2d 1249 (8th Cir.), *cert. denied*, 423 U.S. 853, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975); *United States v. Turcotte*, 558 F.2d 893 (8th Cir. 1977). The rationale adopted by these courts is that Congress will not be presumed to have required specific intent as an element of the crime where the purpose of the statute is the regulation of dangerous objects such as firearms. *See United States v. Freed*, 401 U.S. 601, 607–10, 91 S.Ct. 1112, 1117–18, 28 L.Ed.2d 356 (1971).

 Appellant attempts to avoid the import of these precedents by directing our attention to the fact that § 922(m) requires that a person "knowingly" fail to maintain properly a Form 4473 in order to be convicted. The use of the word "knowingly" in § 922(m) does mean that the government must prove beyond a reasonable doubt that the defendant knew that he did not complete the required forms. Appellant, however, reads too much into the word in asserting that the government must also prove a specific intent to violate the law. In the absence of legislative history to the contrary, Congress' use of the word "knowingly" in a criminal statute aimed at regulating dangerous objects does not itself abrogate the ancient maxim that ignorance of the law is no excuse. *See United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 91 S.Ct. 1697, 29 L.Ed.2d 178 (1971) (proof that defendant "knowingly" violated statute concerning the completion of certain papers pertaining to the shipping of dangerous chemicals requires only that the government show that the defendant knew that the papers were not completed, not that he knew that his omission was illegal).

 Particularly illuminating in this regard are three cases interpreting the meaning of the word "knowingly" in § 922(a)(6) of the same statute involved in this appeal. In *Cody v. United States*, 460 F.2d 34 (8th Cir.), *cert. denied*, 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972), *United States v.*

*Cornett*, 484 F.2d 1365 (6th Cir. 1973), and *United States v. Beebe*, 467 F.2d 222 (10th Cir. 1972), *cert. denied*, 416 U.S. 904, 94 S.Ct. 1607, 40 L.Ed.2d 108 (1974), the Eighth, Sixth, and Tenth Circuits respectively found that "[s]ection 922(a)(6) does not require a showing that appellant 'knowingly' violated the law; it simply requires proof that appellant 'knowingly' made a false statement." 460 F.2d at 38. We reach a similar result in this case; the government did not have to prove that appellant "knowingly" violated the law, it only needed to prove, which it did, that he "knowingly" failed to complete the forms.

Appellant also challenges the district court's refusal to suppress the matchbook cover and note seized from the bureau drawer in the partitioned area of "Currier Custom Firearms". He asserts that these items were not listed in the warrant and that the partitioned area in which they were located was not described as an area to be searched.

The district court found that the warrant's authorization of a search of "the premises known as Currier Custom Firearms" authorized a search of the entire premises and "[t]he fact that there may have been a small portion of the premises in which the defendant had a bed which he could use on occasion as a couch did not in any way negative the authority of the officers to search the entire premises in question." In addition, the district court found that the matchbook cover and note, each of which contained Gagliardi's alias and phone number, were "records relating to the acquisition and disposition of firearms and well within the scope of the authority to search conferred by the search warrant."[2]

We see nothing at all in the record to indicate that the district court's ruling was incorrect. The pieces of paper with the name and number of Gagliardi were beyond doubt records concerning the transaction with Gagliardi. The fact that they were segregated from the other records, yet still

---

2. The court also found that the seizure of the items was justified as the seizure of objects which agents lawfully searching the premises

recognized to be evidence of the crime being charged.

on the premises of the business, does not help appellant.[3]

■ Appellant raises two final challenges which have little merit. First, he asserts that the district court erred in admitting into evidence a copy of the federal firearms regulations which was found on his business premises. Since appellant was at that point of the trial still pressing his theory of mistake of law as a defense, he is not in a position to complain that this evidence was irrelevant. In any event, we can see no prejudice.

■ Second, appellant claims that there is a fatal variance between the proof and the indictment. The indictment charged appellant with selling firearms to Gagliardi without completing the Form 4473 required by 27 C.F.R. 178.124 (1979). Appellant concedes that he disposed of the firearms to Gagliardi, but contends that there was evidence that Gagliardi might have been acting as an agent for another individual, and thus the "sale" was not actually made to Gagliardi. The short answer to this argument is that which was adopted by the district court: 27 C.F.R. 178.124 (1979), to which the incident refers, applies by its terms when a dealer "sell[s] or otherwise dispose[s]" of a firearm, and appellant can show no prejudice whatsoever from the fact that the indictment did not repeat in full the language of the regulation.

*Affirmed.*

---

3. This is not a situation in which one building contains both a business and a home (such as might be the case with a "mom-and-pop" store). Appellant's home was eight miles away.