# United States Court of Appeals
## For the First Circuit

No. 09-1429

UNITED STATES OF AMERICA,

Appellee,

v.

RICARDO RODRIGUEZ,

Defendant, Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Boudin, Dyk,* and Thompson,
Circuit Judges.

Stuart W. Tisdale, Jr., with whom Tisdale & Davis, P.A. was on brief, for appellant.
Jamie L. Wacks, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, and Mark T. Quinlivan, Assistant United States Attorney, were on brief, for appellee.

December 28, 2010

* Of the Federal Circuit, sitting by designation.

**THOMPSON**, **Circuit Judge**.    This appeal pivots on the intriguing interplay between ex post facto principles and the now-advisory Sentencing Guidelines.[1]    Guided by the light of controlling caselaw, we vacate Ricardo Rodriguez's sentence and remand for resentencing.

## Setting the Stage

Caught selling two sawed-off guns to an undercover police officer in 2006, Rodriguez pled guilty to a multi-count indictment charging him with various firearms offenses.  See 18 U.S.C. § 922(g)(1); 26 U.S.C. §§ 5861(d), 5861(e), and 5871.[2]  Sentencing Rodriguez in 2009, the district judge used the Guidelines then in force and applied a four-level trafficking-in-firearms enhancement, see USSG § 2K2.1(b)(5) – a proviso added to the Guidelines after Rodriguez's crime spree, a fact that apparently escaped everyone's attention.  This is no small matter.  The post-offense amendment meant the difference between a sentencing range of 108-130 months (again, using the Guidelines in effect at the time of sentencing) and 70-87 months (using the version in force at the time of the

---

[1]    The Guidelines are no longer mandatory after United States v. Booker, 543 U.S. 220 (2005), as all know. See generally United States v. Irey, 612 F.3d 1160, 1271 n.2 (11th Cir. 2010) (Edmondson, J., dissenting).

[2] Consistent with past practice, we take the key facts from the plea colloquy, the uncontested parts of the presentence investigation report, and the sentencing transcript. See, e.g., United States v. Innarelli, 524 F.3d 286, 288 (1st Cir.), cert. denied, 129 S. Ct. 350 (2008).

crimes). Ultimately, the judge imposed a 108-month prison term (comprising concurrent sentences of varying amounts), the very bottom of what he thought the right range was.

Rodriguez appeals, raising an interesting question: Does sentencing a defendant under advisory Guidelines made more severe since the time of the crime violate the Constitution's ex post facto clause? Some circuits say yes. See, e.g., United States v. Turner, 548 F.3d 1094, 1098-1100 (D.C. Cir. 2008); United States v. Ortiz, 621 F.3d 82, 86-88 (2d Cir. 2010); United States v. Lewis, 606 F.3d 193, 198-203 (4th Cir. 2010). At least one circuit says no. See United States v. Demaree, 459 F.3d 791, 792, 794-95 (7th Cir. 2006); see also United States v. Sanchez, 527 F.3d 463, 466 n.2 (5th Cir. 2008) (suggesting that the Fifth Circuit might follow Demaree). One of our cases intimates agreement with the "yes" camp. See United States v. Gilman, 478 F.3d 440, 449 (1st Cir. 2007) (calling Demaree "doubtful in this circuit"). But this is dicta and so not binding on us. See Dedham Water Co. v. Cumberland Farms Dairy, Inc., 972 F.2d 453, 459 (1st Cir. 1992).

Fascinating as this issue is, we do not have to pick sides in this split to decide Rodriguez's case. Leery of making unnecessary constitutional decisions, see, e.g., Buchanan v. Maine, 469 F.3d 158, 172 (1st Cir. 2006), we stick to the practical approach our cases prescribe for deciding which Guidelines apply –

an approach we need not elevate to a constitutional level – and order Rodriguez resentenced.

## Surveying the Legal Landscape

Because Rodriguez did not raise any ex post facto concerns below, we review his claim only for plain error. See, e.g., United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Under this exacting standard, Rodriguez must show an error that was obvious and that not only likely affected the result in the lower court but also threatens a miscarriage of justice if not corrected. See id.; see also United States v. Sotomayor-Vázquez, 249 F.3d 1, 19 (1st Cir. 2001). When all is said and done, Rodriguez clears these high hurdles.

Booker and its sequels certainly changed the dynamics of criminal sentencing. The Guidelines are no longer binding, and district judges can choose sentences that differ from the Sentencing Commission's recommendations – provided of course that they stay within the range set by the statutes of conviction. See, e.g., Kimbrough v. United States, 552 U.S. 85, 91 (2007).

But this system is not a blank check for arbitrary sentencing. See, e.g., Gall v. United States, 552 U.S. 38, 49-50 (2007); Rita v. United States, 551 U.S. 338, 350 (2007); Booker, 543 U.S. at 264. Judges still must start out by calculating the proper Guidelines range – a step so critical that a calculation error will usually require resentencing. See, e.g., Gall, 552 U.S. at 49, 51;

United States v. Ramos-Paulino, 488 F.3d 459, 463 (1st Cir. 2007). The reason for this is simple. Congress wants judges to do their best to sentence similar defendants similarly. See 18 U.S.C. § 3553(a)(6); see also Booker, 543 U.S. at 250-54, 259-60. And starting with the Guidelines' framework – which gives judges an idea of the sentences imposed on equivalent offenders elsewhere – helps promote uniformity and fairness. See, e.g., Gall, 552 U.S. at 49; Booker, 543 U.S. at 245-60; United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc). But having done that, judges can sentence inside or outside the advisory range, as long as they stay within the statutory range and consider the sentencing factors arrayed in § 3553(a) – factors that include the nature of the offense, the background of the defendant, the seriousness of the crime, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant. See, e.g., Gall, 552 U.S. at 41, 49-50 & n.6; Booker, 543 U.S. at 259-60; see also United States v. Dávila-González, 595 F.3d 42, 46-47 (1st Cir. 2010) (discussing some additional steps – which we bypass here – that district judges must take in working with the advisory-only Guidelines); United States v. Pacheco, 489 F.3d 40, 43-44 (1st Cir. 2007) (similar).

Because most sentences fall within the Guidelines even after Booker, see, e.g., United States v. Saez, 444 F.3d 15, 19 (1st Cir. 2006), starting with the right Guidelines is a must, see, e.g.,

Rita, 551 U.S. at 347-48; Gall, 552 U.S. at 49-51. But the Commission amends the Guidelines almost yearly, so district judges must first decide which version applies.

Congress tells them to use the Guidelines in force at the time of sentencing. See 18 U.S.C. § 3553(a)(4)(A). But if doing that would infract the Constitution's ex post facto clause, the Commission directs them to use the edition in effect on the day the defendant committed the crime. See USSG § 1B1.11(b)(1) (policy statement). We too tell judges to use the old version if the new one raises ex post facto concerns. Reduced to essentials, our set protocol runs this way:

> [W]e ordinarily employ the [G]uidelines in effect at sentencing only where they are as lenient as those in effect at the time of the offense; when the [G]uidelines have been made more severe in the interim, the version in effect at the time of the crime is normally used . . . .

United States v. Maldonado, 242 F.3d 1, 5 (1st Cir. 2001); accord United States v. Wallace, 461 F.3d 15, 22 n.3 (1st Cir. 2006). Created in a commonsense way, this firm practice has shaped the contours of our caselaw pre- and post-Booker, helping judges "avoid any hint of ex post facto increase in penalty." See Maldonado, 242 F.3d at 5. And avoiding even the slightest suggestion of an ex post facto problem in these circumstances makes eminently good sense regardless of whether the practice stems from a constitutional imperative.

-6-

But that does not mean that judges who start with old Guidelines cannot <u>consult</u> new ones in choosing suitable sentences. Quite the contrary. Exercising their <u>Booker</u> discretion, judges mulling over the multiple criteria in § 3553(a) can turn to post-offense Guidelines revisions to help select reasonable sentences that (among other things) capture the seriousness of the crimes and impose the right level of deterrence. <u>See</u> <u>United States</u> v. <u>Gilmore</u>, 599 F.3d 160, 166 (2d Cir. 2010) (holding that consulting later-amended Guidelines like this raises no ex post facto concerns).

We come full circle. Because we need not rest our commonsense protocol on a constitutional command – a holding that squares with the general principle of steering clear of unnecessary constitutional decisions – we do not have to take sides in the inter-circuit conflict highlighted above. And now we turn to Rodriguez's case.

## Applying the Law

Without focusing on which Guidelines controlled, the district judge here used the version in effect at the time of sentencing, even though the Commission had made the Guidelines harsher by adding a four-level enhancement <u>after</u> Rodriguez's crimes. In other words, the judge used the wrong starting point – an error that was plain enough given <u>Rita</u>/<u>Gall</u> (holding that district judges must construct Guidelines ranges accurately) and <u>Maldonado</u>/<u>Wallace</u> (explaining that judges in this situation must use the earlier version to avoid even the possibility of ex post facto punishment).

-7-

So, given an error that is plain (although admittedly not called to the district judge's attention), we must ask whether there is reasonable likelihood of a different result if we remanded and whether there is also a threat of injustice if we affirm. See, e.g., United States v. De La Paz-Rentas, 613 F.3d 18, 25 (1st Cir. 2010); United States v. McCoy, 508 F.3d 74, 80 (1st Cir. 2007). Most sentences are within the Guidelines range, see United States v. Vega-Santiago, 519 F.3d 1, 5 (1st Cir.) (en banc) (noting the "gravitational pull" still exerted by the Guidelines on sentence selection) (quotations omitted), cert. denied, 129 S. Ct. 92 (2008), and here there is a large gap between the range mistakenly used (108-135 months) and the range applicable under the Guidelines in effect at the time of the crimes (70-87 months). The district judge could, of course, still have settled on 108 months but that would have been about 24% higher than the longest sentence within the applicable range using the proper Guidelines.

The government spends little effort arguing lack of prejudice or injustice, but it notes briefly that the district judge at one point said that he "would impose the same sentence without the guidelines, that is, on a nonguideline basis." But a closer look at the full quote suggests that it is more ambiguous than might at first appear.[3] In fact, the quotation could easily be read to

---

[3] The full paragraph in the transcript reads as follows. Tr. 38 (emphasis added).

And I'm going to sentence him as if he

-8-

underscore the importance of the Guidelines in the framing of a sentence.

Certainly there are situations in which a judge might make clear that a dispute about a Guidelines calculation did not matter to the sentence. This might be a different case if, for example, the district judge had been faced with an explicit choice between the two sets of Guidelines, and thus understood the magnitude of the difference between them, when he said the choice did not affect the sentence. But, recognizing that plain error is a demanding standard, <u>United States</u> v. <u>Padilla</u>, 415 F.3d 211, 221 (1st Cir. 2005) (en banc), we think that a remand in this case is appropriate.

**Summing Up**

The parties spend a lot of time debating whether the district judge committed an error of <u>constitutional</u> dimensions, which is understandable given the inter-circuit dust-up over this issue. But we decline to join the fray. Instead we decide Rodriguez's case in line with the sensible policy outlined above –

were a level 31 and impose a 108-month sentence. That is a guideline departure sentence. I would impose the same sentence without the guidelines, that is, on a nonguideline basis. It is a nine-year sentence, which is a long term for someone his age, but the activity is dangerous and serious, and I <u>cannot grant any further departure or downward movement other than that</u>.

-9-

a policy that holds sway irrespective of any constitutional pedigree.

Against this legal backdrop, Rodriguez's plain-error claim prevails, so we exercise our discretion to remand for resentencing consistent with this opinion.[4]

**So Ordered**.

---

[4] Rodriguez also challenges the district judge's § 3553(a) assessments in several respects. We need not decide these issues now, however – the district judge can work these matters out as necessary on remand.